### C. B. SMITH & COMPANY v. CHARLES HOLZHAUER, PROSECUTOR.

Submitted July 3, 1901—Decided November 11, 1901.

1. While the negligence of the maker of negotiable paper, in leaving blanks therein, may, in some cases, be a bar to the defence of fraudulent alteration, by the filling in of the blanks, when set up by a *bona fide* holder, this doctrine has no application in a suit by the assignee of paper which is not negotiable.
2. An order, in writing, by a retail druggist, directing a wholesale dealer to ship certain merchandise, through any jobber or direct, and purporting to contain a bill of the goods, with prices annexed, is not a negotiable instrument in the sense stated, and in a suit thereon by the assignee, who was a jobber, for the price of the goods furnished by him, it was held, on review, that the defence of fraudulent alteration would avail against the assignee without notice, even though the signer may have been negligent in leaving blanks in the instrument, whereby such alteration was made easy.

---

On *certiorari.*

Before Justices GUMMERE and HENDRICKSON.

For the prosecutor, *Frank E. Bradner.*

For the defendant, *Chauncey G. Parker.*

The opinion of the court was delivered by

HENDRICKSON, J. The prosecutor of this suit, who was the defendant below, seeks a reversal of a judgment of the First District Court of the city of Newark, recovered by C. B. Smith & Company, a corporation, the plaintiff below.

The claim grew out of an order for patent medicines, signed by the defendant, who is a druggist of that city. The order is addressed to the Dr. A. P. Sawyer Medical Company, of Chicago, directing it to ship the annexed order, through any jobber or direct, which the signer agrees not to countermand; then follows along with some data as to the post-office of buyer, terms of payment, &c., the items of goods ordered, with the prices annexed, with the total at the foot of $63. To this is added, above the signature of the defendant, the following: "There is no agreement aside from this order. All special promises are specified either on the face or back of this order. I have a correct and complete copy of this order, and all the special promises or agreements are made upon the face or back of this order written in ink by your salesman." There was considerable other printed matter attached with reference to sending two thousand papers containing a twenty-five-cent coupon for Family Cure Tablets, redeemable by jobber or direct, and other kindred subjects, which have no particular relation to the points to be considered, and therefore need not be reproduced.

The case shows that the order, after it was signed, was turned over by the Dr. Sawyer company, along with other orders procured from retail druggists, to the plaintiff, a jobbing druggist of Chicago, and the latter filled the order from goods purchased of the Dr. Sawyer company, and paid the bill, less the discount. This order, and the others named, were thus turned over and filled pursuant to an agreement or arrange-

ment entered into between the two companies named before the obtaining of the orders. The defendant resisted the suit on the ground, as he alleged, that the order was obtained of him by the traveling salesman by false and fraudulent representations, made at the time, as to the contents of the order and the character of the transaction, and further, on the ground of fraudulent alteration. These representations, according to defendant's testimony, were that there were no goods to be purchased; that defendant was to merely introduce a new line of goods, to act as agent in putting out sample bottles; that the company would send as many sample bottles as the people would call for, paying a nickel and producing a coupon cut from the daily newspapers of Newark, in which they were to advertise, for each bottle. The order contained, among other matter attached below the signature, the following: "Send 50 bottles Family Cure Tablets, 25c. size, to be accounted for by return of coupons." The defendant testified further that there was nothing written on the order when he signed it; that the "$63," being the amount of goods alleged to have been ordered, was not on the paper when he signed it; that he never would have signed a paper of that kind with an amount of money specified on it; that he had objected to signing the paper, and finally did so in a great hurry, as he (defendant) was leaving his store to go into the country for the summer, and after the repeated statement that it was only an agreement to act as one of their agents. After signing the papers in duplicate, they were left in the salesman's possession at the store. The goods were delivered at the store, but acceptance was refused, and were held ready to be returned to the plaintiff.

This is the substance of defendant's version of what occurred. The sales agent gave a different version of the affair. But we are not concerned as to the facts, and have referred to them only so far as is necessary to an intelligent consideration of the matters alleged for error.

One of the reasons assigned for reversal is as follows: "That the judge erroneously charged the jury that if they found that the written agreement signed by the defendant had been

changed by the addition of certain words and figures by the agent who solicited the agreement, they must go further and find that the plaintiff had notice of such alteration in the agreement, before paying the said Sawyer company for the goods, in order to find a verdict for the defendant."

The learned trial judge charged the jury, among other things, as follows: "It is not stated at all that Mr. Holzhauer entrusted this man to fill in anything, and if he did fill it in after Mr. Holzhauer signed this paper, it was a forgery, and if there was an action between the A. P. Sawyer Medical Company suing Mr. Holzhauer to-day, and you were satisfied of that fact, you would be told by the court that it would be your duty to find a judgment for the defendant; but this paper is a paper that has come to the hands of the C. B. Smith & Company, as jobbers, and if, when signed by Mr. Holzhauer, he left it in that blank shape, that it was easy to fill in these amounts, by which he put it in the hands of these people to pass this paper to a jobber, then, if through that negligence in leaving it in this blank form, they have been deceived, they have taken these goods and filled these orders, then the loss should fall upon him who made it possible for a man, by the commission of forgery, to injure the plaintiff."

And further on in his charge is the following: "As I have stated before, if he did carelessly sign a paper not knowing what was in it, or signed a blank paper upon which forgery might be readily committed by adding to it and putting in figures, still, this paper is in the hands of a third party and it was a transferable paper in its nature, and in the hands of a third party—C. B. Smith & Company—who say they took these orders and furnished these goods and have paid for them, and it is important, in that view of the case, to find out how much these goods were worth." The court further on charged: "But if they [referring to C. B. Smith & Company] went on innocently and paid for these goods, relying upon this order, and having no reasonable warning that there was fraud or forgery in the order, then they should be entitled to recover."

The court here erred, we think, in limiting the defence of

forgery or fraudulent alteration of the instrument in question to the original contracts, and in charging that if the plaintiff, being a third party, had received the paper and filled the order without notice of the fraud or forgery, such defence could not avail the defendant if he had negligently left the blanks in the paper, making it easy for the forgery to be executed.

There is a contrariety of judicial decision as to whether the doctrine thus stated will enure to the benefit of the *bona fide* holder of a negotiable instrument without notice in a suit against anyone who became a party thereto prior to the alteration. It is unnecessary to determine in this case what the true rule is in that particular, for the doctrine, where it exists at all, is confined to negotiable instruments only. 4 *Am. & Eng. Encycl. L.* (*2d ed.*) 332, 333.

The instrument in question does not belong to that class; it is a contract for the purchase of merchandise, and it lacks the qualities of negotiability that belong to promissory notes, bonds and other securities. *Boyd* v. *Kennedy,* 9 *Vroom* 146; 16 *Am. & Eng. Encycl. L.* 480.

It is a familiar doctrine that the assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all of his rights and privileges, but acquires no greater right than his assignor had in the thing assigned. 2 *Am. & Eng. Encycl. L.* 1079; *Alexander* v. *Brogley,* 34 *Vroom* 307.

It has been urged that this part of the charge, with regard to the effect of negligence of the signer, might be justified on the ground that where one of two persons otherwise innocent must suffer, he should suffer whose negligence allowed the loss to occur.

The answer to this is found in the opinion of Mr. Justice Dixon, speaking for the Court of Errors, in *Alexander* v. *Brogley, supra,* where, in answer to a similar contention in that case, he says: "The plaintiff does not stand in the position of the innocent person. As assignee he is entitled only to the rights of his assignor, and the assignor is, in legal contemplation, implicated in the fraud of the agent, so far as

relates to the enforcement of the alleged contracts from which the defendants have hitherto accepted no benefit."

Since the conclusion thus reached leads to a reversal, we have deemed it unnecessary to examine the other reasons assigned for error. The result is that the judgment below is reversed.